A rehearing was granted in this matter because we entertained doubt as to the correctness of our original opinion wherein we held that the defendant, Charles Rauschkolb, was liable to the plaintiff for a commission for securing a purchaser for his real estate and that we could not consider in this suit the validity of his contention *Page 339 
that the sale has never been consummated as a consequence of the fault of the purchasers because the latter have refused without just cause to accept title to the property.
The facts of the case are fully set forth in our original opinion. See 199 So. 663. However, for purposes of convenience and in order that the question of law presented may be more readily grasped, we feel that it may be helpful to again restate them.
Leaman, the real estate agent, was employed by Rauschkolb to sell a certain piece of real estate and he secured Mr. and Mrs. E.J. Guidry, who signed a written offer to purchase the property for $2,000, payable $400 in cash and the balance of $1,600 to be obtained in the form of a loan from a homestead in the City of New Orleans. This offer was made upon the condition that Mr. and Mrs. Guidry would be successful in obtaining a loan on the property from a homestead and it was provided that, in the event they were unable to have the homestead agree to make the loan within 15 days from the date of the agreement, then the offer would be considered as null and void. The offer further provided that, if it was accepted by the vendor, Mr. and Mrs. Guidry would immediately deposit with Leaman, the real estate agent, $200 in cash and that "In the event that we fail to comply with this agreement within the time specified, the vendor shall have the right, either to declare the deposit, ipso facto, forfeited, without formality and without placing us in default, time being the essence of this contract; or the vendor may demand specific performance." The offerers also agreed that:
"In the event that our deposit is forfeited, the commission of the agent shall be paid out of this deposit, reserving to the vendor the right to proceed against us for the recovery of the amount of the commission."
The offer was accepted by the defendant Rauschkolb in writing as follows:
"I accept the above offer in all its terms and conditions and agree to pay the commission of P.J. Leaman, Agt. amounting to One Hundred and No/100 ($100.00) Dollars."
It is shown by the record that, in accordance with the terms of their offer, Mr. and Mrs. Guidry applied to the Third District Building Loan Association of the City of New Orleans and were successful in obtaining from it a loan to cover the purchase price of the property; that the homestead, through its attorney, examined Rauschkolb's title to the real estate; that he found that the title was defective in certain particulars and that he informed Rauschkolb that the homestead would be unwilling to accept the title unless the defects complained of were corrected.
Rauschkolb refused to recognize that the objections made by the homestead's attorney were well founded and he maintained that he had a good and marketable title which he was willing to deliver to the purchasers. With affairs in this state, it appears that nothing further was done either by Mr. and Mrs. Guidry or Rauschkolb and, thereafter, Leaman brought this suit to recover the commission which he alleges was earned upon the signing of the agreement of sale and purchase.
The defense of Rauschkolb to the suit is that his agreement to pay Leaman a commission should be interpreted to mean that the commission would be due only in case the sale of his property was consummated; that he has offered Mr. and Mrs. Guidry a valid title to the property; that they and their prospective mortgagee, the homestead, have, without just cause, refused to accept the title and that, under such circumstances, he should not be held responsible since the sale has not been consummated through the fault of the purchasers.
In our original opinion, we held that the question of whether Rauschkolb is or is not at fault in the premises is one which can only be settled in an action between the vendor and the purchasers; that it cannot be collaterally determined in a suit by the realtor for the recovery of a commission and that, since Rauschkolb has failed to establish by a separate action that the sale has not been consummated through no fault of his, he is liable for the commission because Leaman has fully performed his part of the agreement by securing purchasers acceptable to Rauschkolb, who were ready, willing and able to buy the property.
A review of the applicable jurisprudence reveals the following: For many years, the Courts of Appeal of this State had established the rule, which is in line with the common law authorities, that a real estate agent employed to sell property is entitled to a commission when he has secured a purchaser ready, able and willing to buy on the terms prescribed by the *Page 340 
vendor; that he has the right to assume that his principal has a marketable title and that, when he finds a purchaser acceptable to his principal, his obligation has been fulfilled even though the sale is never consummated because of the fault of the principal or because of the latter's inability to furnish a title free from defect. See Gristina v. Nunez, 8 La.App. 531; Loyacano v. Succession of Thompson, 4 Orl.App. 345; Gurley Parkinson v. Loeffler, 14 Orl.App. 424; Palmisano v. Stewart, 3 La.App. 66; Dauterive v. West India Transportation Corp., 3 La.App. 319; Barry v. Guiffria, 10 La.App. 123, 120 So. 878; Devereaux Ashby v. Rochester, 10 La.App. 430, 120 So. 658; Clesi v. Thacher, 12 La.App. 55, 125 So. 194; and Mercer v. Dambly, 16 La.App. 354, 133 So. 455.
The views expressed by the Courts of Appeal in the above cited cases were subsequently approved in the year 1930 by the Supreme Court in Mathews Bros. v. Bernius, 169 La. 1069, 1070,126 So. 556, 558, where that court, after citing 2 Corpus Juris, pages 769 and 770, as authority, observed that, where the broker had produced a purchaser acceptable to his principal, his obligation was fulfilled in spite of the fact that a sale could not be consummated as a consequence of the inability of the principal to convey a marketable title. And, in its consideration of the question, the court made it very clear that the right of the agent to a commission is not in any way dependent upon the validity of his principal's title, for it said:
"The broker, in such a case, in the absence of notice to the contrary, has the right to act upon the assumption that his principal has a marketable title."
The opinion in Mathews Bros. v. Bernius, supra, so far as we are able to discern, has never been overruled but it is apt to remark that, in a later case, viz: Boisseau v. Vallon Jordano,174 La. 492, 141 So. 38, the Court, in holding that the realtors were not entitled to a commission, used language from which an inference might be drawn that the agent cannot recover his commission unless the sale of the property is consummated. That case, which we have had occasion to discuss before (See Spiro v. Corpora, La.App., 174 So. 145, Guy L. Deano, Inc. v. Michel, La.App., 181 So. 551, and our original opinion in this matter), holds that a contract of exchange, which contained provisions favorable to the real estate brokers to the effect that their commission was earned upon the signing of the agreement of exchange whether it could be consummated or not or whether it was later annulled by judgment of court, does not express the true intention of the parties to the agreement; that to enforce it would lead to an absurd consequence in discord with the provisions of Article 1945 of the Civil Code and that it should be interpreted to mean that the parties to the agreement did not intend to bind themselves to pay the broker a commission if the title to the property to be conveyed was defective and could not be made valid within a reasonable time and at a reasonable expense.
Some years after the decision of the Supreme Court in the Boisseau case, we had a similar question presented to us in Spiro v. Corpora, supra, involving the interpretation of an agreement to exchange real estate identical with the one presented in the Boisseau case. In following the Supreme Court's holding in that matter, we quoted at length from the decision and pointed out that it was there held that the broker could not recover a commission where he had produced a purchaser ready, able and willing to buy if it later developed that the contract was impossible of fulfillment because the title to his property was defective. We further remarked that the Supreme Court in the Boisseau case had neither cited nor discussed its previous holding in Mathews Bros. v. Bernius, supra, and that "we experience difficulty in attempting to reconcile it with the language used by the court in the later case of Boisseau v. Vallon Jordano, supra." [174 So. 148.] Recognizing what we thought to be an apparent conflict of authority, we declared that it was our duty to follow the latest expression of the Supreme Court as set forth in the Boisseau case and rejected the plaintiff's demand for a commission. Writs to review our decision in the Spiro case were denied by the Supreme Court.
Subsequently, the case of Deano, Inc. v. Michel, La.App., 181 So. 551, was presented for our decision. There, it appeared that the agent had produced a purchaser ready, able and willing to buy Michel's property; that Michel had a valid title at the time he agreed to pay the agent a commission but that he was later prevented from consummating the sale because his wife recorded a homestead against the property. In resolving the case in favor of the real estate agency on the *Page 341 
authority of Mathews Bros. v. Bernius, supra, we discussed at length the opinion in that matter and also the later decision of the court in the Boisseau case. We pointed out that there was a difference between the contracts presented in the two cases in that there was involved in the Boisseau case an exchange of property where the real estate broker represented both parties under a contract whereby each party was liable for a commission whether the exchange could be consummated or not, whereas, in the Bernius case, the realtor was acting solely as agent for the vendor. And we further found that the Supreme Court could have rested its decision in the Boisseau case on the ground that Boisseau entered into the agreement of exchange on condition that he would be able to obtain a loan; that he made a bonafide effort to do so but failed and that it was never his intention to be bound for the payment of a commission in the event he could not secure a loan on the property. We recognized, however, that the Supreme Court went much further in the Boisseau case by declaring that, under such a contract, the realtor was not entitled to receive a commission from his principal if the sale could not be consummated because the principal's title to the property was defective. As to this statement, we expressed the view that it was either inadvertently placed in the opinion or was mere obiter dicta because, if it be regarded otherwise, it would have had the effect of overruling the long line of cases which had firmly established the doctrine that the broker who secures a purchaser ready, able and willing to buy the property is entitled to a commission although the sale is not consummated because of the inability of the vendor to comply with the offer.
The Supreme Court granted writs of review in Deano, Inc. v. Michel, supra, and reversed the decision of this court. See191 La. 233, 185 So. 9, 10. In its opinion, the court declared that Michel was not liable for the agent's commission because the sale could not be consummated through no fault of his inasmuch as he was rendered powerless from carrying out his obligation to transfer the property by the act of his wife in recording the declaration of a family home after he had in good faith agreed to sell the property. The court distinguished the case from the decision in Mathews Bros. v. Bernius on the ground that, at the time Mrs. Bernius listed her property with the real estate agent, she was not in a position to convey a valid title to the property she was offering to sell, whereas, at the time Michel listed his property with the real estate agent, he had a perfect title and there was every reason for him to believe that, if a purchaser was found, he could transfer it without encumbrance. It was found that the only reason why Michel was unable to convey a title was due to no fault of his own but to the act of his wife over which he had no control. The court further cited with approval the decision in Boisseau v. Vallon Jordano, stating:
"The case falls within the provisions of Article 1945 of the Civil Code as interpreted in the case of Boisseau v. Vallon 
Jordano, supra, which relieves the court of the obligation of enforcing a written contract when to do so would lead to an absurd consequence."
Thus, we see that, in its latest expression on this subject, the Supreme Court approves its holding in Boisseau v. Vallon 
Jordano and that it is likewise of the opinion that the decision in Mathews Bros. v. Bernius is not in conflict with that authority. We discern, therefore, that it is the view of the Supreme Court that agency contracts of this kind should be interpreted to mean that the vendor hires the real estate agent with the intention of becoming liable for a commission only in the event a sale of the property is consummated; that explicit provisions to the contrary contained in the contract will not be enforced, since, to do so would lead to an absurd consequence and that the vendor is not responsible for a commission in the event the sale is not consummated unless (1) it appears that he, the vendor, was at fault in that he refused to convey the title to the purchaser without cause or (2) unless he is unable to consummate it because his title, at the time he agreed to sell, was not marketable. If, on the other hand, it appears, as in the Deano case, that the vendor had a marketable title to the property at the time he agreed to sell it and subsequently, through no fault of his, it becomes encumbered so that it cannot be transferred, then the real estate agent is not entitled to a commission.
Let us therefore apply our appreciation of the views expressed by the Supreme Court in the Deano case to the facts presented in the instant matter. Rauschkolb maintains that the sale has not been consummated through no fault of his but because *Page 342 
the prospective purchasers have made objections to his title which are not well founded in law. If this be true, he should be relieved from the payment of the agent's commission. However, in order to determine the correctness of his contention, the court would be compelled to delve collaterally into the question of the soundness of his title, a question which could and would be properly presented and decided either by a direct action for specific performance by Rauschkolb against the purchasers or by an action by him against them for damages for breach of contract.
Rauschkolb admits that he has failed to avail himself of the above mentioned remedies and an examination of the promise of sale discloses that he has been accorded certain other rights which afford full protection to him, in the event he is compelled to pay the commission which has been earned by Mr. Leaman. The record shows that, upon Rauschkolb's acceptance of the written offer made by Mr. and Mrs. Guidry, they deposited with Leaman, as defendant's agent, the sum of $200 and they agreed that "In the event we fail to comply with this agreement * * * the vendor shall have the right, either to declare the deposit, ipso facto, forfeited, without formality and without placing us in default * * * or the vendor may demand specific performance." They also agreed that:
"In the event our deposit is forfeited, the commission of the agent shall be paid out of this deposit, reserving to the vendor the right to proceed against us for the recovery of the amount of the commission."
Thus, it will be seen that the defendant (if his contention that the purchasers are in default is correct) has the right to declare that the deposit of $200 is forfeited and he can instruct Leaman, as his agent, to turn over $100 to him and keep the balance of $100 in payment of the commission due. And, after this is done, he can file suit against Mr. and Mrs. Guidry for recovery of the amount given Leaman as a commission together with whatever other damages he has been subjected to as a result of their failure to accept the title he tendered them. Then too, if he feels that he would prefer a specific performance, he can bring a direct action praying for that relief.
But Rauschkolb has not seen fit to resort to any of the remedies given him by the agreement of sale. He has preferred to remain inactive, and now, when he is sued by his agent for the commission he agreed to pay, he proclaims that he is not liable because the purchasers have refused to accept title to his property. To permit him to try the question of the validity of his title in this case, when, under the agreement, he is vested with adequate remedies, would, we think, be unfair and unjust not only to the plaintiff but to the prospective purchasers, who are not before the court.
For the reasons assigned, our original opinion and decree herein are reinstated as the final judgment of this court.
Original decree reinstated.